Mr. Harlow C. Middleton City Attorney City of Mount Dora 431 Donnelly Street Mount Dora, Florida 32757
Dear Mr. Middleton:
This is in response to your request for an opinion on substantially the following question:
 MAY AN AREA BE ANNEXED BY A MUNICIPALITY PURSUANT TO s. 171.0413, F.S., AS AMENDED BY s. 1, Ch. 86-113, LAWS OF FLORIDA, IF THE OWNERS OF SUCH AREA DO NOT LIVE UPON THE LAND BUT, RATHER, LIVE IN THE ANNEXING MUNICIPALITY?
You have informed this office that the City of Mount Dora is considering whether to annex pursuant to s. 171.0413, F.S., as amended by s. 1, Ch. 86-113, Laws of Florida, an uninhabited parcel of property surrounding a portion of the municipality. The owners of the property live within the corporate boundaries of Mount Dora. Initially, it should be noted that this office has not been advised of any special or general law of local application relating to annexation by the City of Mount Dora, and accordingly, for purposes of this inquiry, it is assumed that no such laws exist.
Section 2(c), Art. VIII, State Const., provides in pertinent part that "[m]unicipal annexation of unincorporated territory . . . and exercise of extra-territorial powers by municipalities shall be as provided by general or special law." See, s. 166.021(3)(a), F.S., which directs that municipalities have the power to enact legislation on any subject matter upon which the Legislature may act except "[t]he subjects of annexation, merger, and exercise of extraterritorial power, which require general or special law pursuant to s. 2(c), Art. VIII of the State Constitution." Municipal annexation is governed by the Municipal Annexation or Contraction Act, ss. 171.011-171.091, F.S. (hereafter the Act). Pursuant to s. 171.021, F.S., "[t]he purposes of this act [ch. 171] are to set forth procedures for adjusting the boundaries of municipalities . . . and to set forth criteria for determining when annexations or contractions may take place. . . ." Section171.022(1), F.S., further provides that it is the purpose of the Act "to provide viable and usable general law standards and procedures for adjusting the boundaries of municipalities in this state." Any municipality may annex contiguous, compact, unincorporated territory in the manner established in the Act. See, s. 171.0413, F.S., as amended, setting forth annexation procedures. And see, s. 171.043, F.S., especially subsections (1) and (3) thereof, authorizing municipal governing bodies to propose to annex an area only if it meets certain standards and requirements.
The annexation procedure set forth in s. 171.0413, as amended, is declared to be a uniform method for the adoption of an ordinance of annexation by the governing body of any municipality "[e]xcept as otherwise provided in this law." Section 171.0413(4). This office has construed the foregoing proviso as referring to s.171.044, F.S., as amended by s. 2, Ch. 86-113, Laws of Florida, which provides for an alternative procedure for voluntary annexation without a referendum. See, AGO 81-22 and Capella v. City of Gainesville, 377 So.2d 658 (Fla. 1979). And see, s.171.022(2), F.S., which repeals the provisions of any special act or municipal charter relating to the adjusting of municipal boundaries in effect on October 1, 1974, except as otherwise provided in Ch. 171; and s. 171.0413(4), F.S., which repeals all existing provisions of special laws which establish municipal annexation procedures except that any provisions of special laws which prohibit annexation of territory that is separated from the annexing municipality by a body of water or watercourse shall not be repealed. In SCA Services of Florida, Inc. v. City of Tallahassee, 418 So.2d 1148, 1150 (1 D.C.A. Fla., 1982), the court construed ss. 171.021 and 171.022, F.S., supra, in pari materia and declared that "it is apparent that the legislature intended to provide a clearly defined and exclusive method by which an annexation could be accomplished." See, 12 Fla.Jur.2d Counties and Municipal Corporations s. 54; AGO's 80-84; 81-82; and 86-5. And see, McGeary v. Dade County, 342 So.2d 549 (3 D.C.A. Fla., 1977) (power to extend municipal boundaries must be exercised in strict accordance with statutes conferring such power). See also, AGO 77-133 ("a municipality is precluded [absent express general or special law authorization] from enacting any annexation procedures contrary to Ch. 171, F.S., irrespective of whether such procedures would be less stringent or more stringent than those provided in Ch. 171").
Section 171.0413(5), F.S., provides:
 If more than 70 percent of the land in an area proposed to be annexed is owned by individuals, corporations, or legal entities which are not registered electors of such area, such area shall not be annexed unless the owners of more than 50 percent of the land in such area consent to such annexation. Such consent shall be obtained by the parties proposing the annexation prior to the referendum to be held on the annexation. (e.s.)
In A.B.A. Industries, Inc. v. City of Pinellas Park, 366 So.2d 761,762 (Fla. 1979), the Florida Supreme Court construed former s.171.0413(5), F.S. (1977) which provided that
 [i]f the area proposed to be annexed is predominantly owned by individuals, corporations, or legal entities who are not registered electors of the area proposed to be annexed, such area shall not be annexed unless a majority of such individuals, corporations, or legal entities consent to such annexation. (emphasis supplied by Court)
The Court held the 1977 annexation statute to be constitutionally defective, inasmuch as it was impossible to determine from the statute whether the phrase "predominantly owned" referred to the number of individuals, corporations or legal entities not registered to vote or to the amount of land area to be annexed which was owned by individuals, corporations or legal entities not registered to vote, and accordingly declared subsection (5) of s.171.0413, F.S., unconstitutionally vague and ambiguous. The Court was also unable to determine whether it was necessary that consent be obtained by the annexing authority before the referendum mandated by s. 171.0413(2), F.S., after the referendum, or at any time without limit.
The Legislature subsequently amended s. 171.0413(5), F.S., to provide that
 [i]f more than 70 percent of the land in an area proposed to be annexed is owned by individuals, corporations or legal entities who are not registered electors of the area proposed to be annexed, such area shall not be annexed unless the owners of more than 50% of the land in the area proposed to be annexed consent to such annexation. Such consent shall be obtained by the parties proposing the annexation prior to the referendum to be held on the annexation. (e.s.)
See, s. 1, Ch. 80-350, Laws of Florida. In 1981, the Legislature again amended s. 171.0413(5) to its present form to remove redundancy. See s. 76, Ch. 81-259, Laws of Florida, a revisors bill, which changed the language from "the area proposed to be annexed" to "such area."
Examination of the legislative history of s. 171.0413(5), F.S., reveals the intent of the Legislature in setting forth the procedure for municipalities to follow in those instances where more than 70 percent of the land in an area proposed to be annexed is owned by individuals, corporations or legal entities which are not registered electors of such area. In light of such legislative history, it appears clear that the phrase "such area" in subsection (5) of s. 171.0413, refers to the area proposed to be annexed. In the foregoing instance, such area may not be annexed unless the owners of more than 50 percent of that land consent to the annexation regardless of where such owners live. You have advised this office that the parcel of property which the City of Mount Dora is considering whether to annex is uninhabited and that the owners of such property live within the City of Mount Dora. Therefore, it appears clear that more than 70 percent of the land in the area proposed to be annexed is owned by individuals, corporations, or legal entities which are not registered electors of such area. Accordingly, such area may not be annexed unless the owners of more than 50 percent of the land in such area consent to such annexation. Moreover, such consent must be obtained by the parties proposing the annexation prior to the referendum to be held on the annexation.
In sum, it is my opinion that the City of Mount Dora may annex pursuant to s. 171.0413(5), F.S., contiguous, compact, unincorporated territory, where the owners of more than 70 percent of the land proposed to be annexed are not registered electors, provided that the owners of more than 50 percent of such land consent to the annexation prior to the referendum on annexation.
Sincerely,
Jim Smith Attorney General
Prepared by:
John Rosner Assistant Attorney General